## MARKLEWITZ v. OLDS MOTOR WORKS.

1. MASTER AND SERVANT—PERSONAL INJURIES—TRIAL — INSTRUC-
TIONS—SUFFICIENCY.

Where, in an action by a minor servant for injuries received
while shaping up a piece of wood on a jointer, the declara-
tion is broad enough to permit recovery in case the work in
which plaintiff was engaged was work in which he was ex-
pected to make use of the machine in question, and might
naturally be expected to resort to the use of such machine,
if there was a failure of duty in giving him proper instruc-
tions, and there is testimony upon which a recovery upon
that theory may be had, instructions are erroneous which
confine the plaintiff's case to the single claim that he was
specifically set to do the particular piece of work.

2. SAME—INSTRUCTIONS—EFFECT OF TESTIMONY.

The testimony of defendant's foreman being fairly open to the
construction that plaintiff was expected to make use of the
machine, and that it was for that reason he was cautioned it
was a dangerous machine, it was error in stating defendant's
claim to the jury to state that defendant denied that plain-
tiff was ever authorized to use the machine, but on the con-
trary had been expressly forbidden.

3. SAME — DUTY OF SERVANT — NATURE OF EMPLOYMENT — QUES-
TION FOR JURY.

Whether plaintiff, from the nature of his employment, might
fairly have understood he was expected to make use of a cer-
tain machine was a question for the jury.

4. SAME—DUTY TO INSTRUCT SERVANT.

If, from the nature of his employment, a servant might fairly
have understood that he was expected to make use of a cer-
tain machine, the duty of proper instruction was imposed
upon the master.

5. SAME—PROPRIETY OF INSTRUCTIONS.

It is the duty of an employer, before setting an inexperienced
employé at work upon a dangerous machine, to explain to
him its mode of successful operation, its dangers to the un-
skilled, and the care and attention demanded from its opera-

tor; the degree of instruction to be given depending upon the age and experience of the servant and the dangerous character of the machine he is directed to operate.

6. SAME—APPREHENSION OF DANGER.
   In an action by a servant for injuries received while operating a dangerous machine, the jury were properly instructed that it was a question for them whether, if the plaintiff was directed by the foreman to operate the machine but was not instructed about its use, he knew enough about the machine to apprehend and appreciate the danger likely to arise from its use by him, or whether the danger from its use was obvious to a boy of his age and experience, and if it was, that his own negligence would be a bar to recovery.

Error to Ingham; Wiest, J. Submitted January 17, 1908. (Docket No. 80.) Decided March 31, 1908.

Case by John A. Marklewitz, by next friend, against the Olds Motor Works for personal injuries. There was judgment for defendant, and plaintiff brings error. Reversed.

*Frank L. Dodge* and *John J. Zimmer*, for appellant.
*Rollin H. Person*, for appellee.

MONTGOMERY, J. This is an action to recover damages for personal injuries received on account of the alleged negligence of the defendant. The declaration is in two counts, each averring that plaintiff, when at the age of 16 years, and without experience in the business, was employed by the defendant for the purpose of learning the trade and business of pattern maker. The first count avers that he entered the employment of the defendant on the 3d of February, 1905, and that he was called by the defendant's superintendent or foreman to operate a machine known as a jointer, which is a machine with several large revolving knives and attended with great danger; that plaintiff had no previous knowledge of the operating of the machine, and was inexperienced and unacquainted

with the danger of operating such a machine; that he received no instructions or directions in regard to operating the same.   He avers that it was the duty of the defendant, before entrusting him with a machine of the danger attending the operation of said jointer, to have fully explained its operation, and to have seen to it that he was properly instructed and advised in regard to the same; that he was employed for the purpose of learning the trade of pattern maker and not to operate such jointer or other machine, but that he was put to work on the jointer, and by reason of his lack of experience and knowledge, and his youth, without fault or negligence on his part, and while in the exercise of due care and caution, his hand was caught in the revolving knives of the jointer and the two front fingers of his right hand were cut off or severed.

The second count avers the employment of the plaintiff as a pattern maker and the duty of the defendant not to require him to work about machinery or do other work of a dangerous character where plaintiff was liable to be injured or to permit plaintiff, being a minor of the age of 16, to work upon a jointer or use or operate the same unless he had been instructed in the use of the same, and then not until he had been watched by the servants of the defendant until they were satisfied that he was capable of successfully operating the same, appreciating and avoiding the danger attending its operation, and avers that he had never seen such jointer or one similar in operation, and avers that the defendant was negligent in calling upon plaintiff, who was inexperienced as aforesaid and unacquainted with the operation of a jointer, to operate the same, and in putting him to work on a dangerous machine without instructing and directing him in the manner of operating the same, and without seeing that he was capable of managing the jointer with a reasonable degree of care and safety, and particularly in putting him to work on such machine without full instructions and directions, and in authorizing or permitting said plaintiff to

operate said jointer without giving him instructions and directions as to the manner of operating the same, and without explaining to him the dangers incident to its operation, and avers that by reason of such negligence of the defendant aforesaid, he was put to work on said jointer, and having operated the same but a short time, while in the exercise of due care and caution, and without fault and negligence on his part, his hand was caught in the machine and the injury resulted.

The evidence on the trial was conflicting in some points. The plaintiff testified that he had no previous acquaintance with machinery of that kind, and that he so informed the defendant's foreman when he was employed. The defendant's foreman testified that plaintiff assured him that he had had experience working in a pattern shop of the Bement factory, while plaintiff's testimony was that he had told the defendant that he had worked in the Bement foundry, not in the pattern factory. Plaintiff testified that he was expressly directed by this foreman to use the machine in question, and that when he hired out he did not agree to work at or expect to run a jointer. The defendant's foreman testified that plaintiff had assured him that he had had several months' experience and that he was not taken on strictly as an apprentice but as an "improver," so-called; that apprentice wages were 75 cents a day; and that plaintiff was given $1 a day because of his having had some experience. He denied that he had instructed the plaintiff to use the machine in question. He testified, however, as follows:

"A pattern maker is supposed to use any of the machines which are placed in the shop for his use, and to use them at his own discretion.

"Q. State whether or not it becomes part of the duty and education of pattern makers to use those machines?

"A. A man or anybody going to work in a pattern shop has to learn to use the machine; that is, they have to learn to use the machine by seeing others use them, and also by general instructions from the man in charge.

"*Q.* The point I want to get at is whether that is a part of their trade, the use of those machines?

"*A.* The use of the machine is a part of the trade.
* * *

"*Q.* Did you say anything to the plaintiff, young Marklewitz, about the jointer and saw or any of the machines, and if so, what?

"*A.* The only thing that I ever said to him about the matter was the morning that I placed him on the bench, I merely pointed out the machine called the jointer and the machine called a saw and I told him they were dangerous machines and that they would cut him as quick as they would me.

"*Q.* Was anything further said about the machines to the boy?

"*A.* In relation to their using them?

"*Q.* Yes.

"*A.* No, there was not.

"*Q.* That was what you told him that it was a dangerous machine?

"*A.* That is all I told him.   * * *

"*Q.* Now, Mr. Otto, state what, if anything, was said at that or any other time about this young man's planing blocks or anything else on the jointer?

"*A.* There was not.

"*Q.* At any time?

"*A.* At any time.   * * *

"*Q.* Do you know whether or not he fixed that piece that you sent him to fix?

"*A.* The one that I asked him to get for me?

" *Q.* Yes.

"*A.* Yes, sir, he got it.

" *Q.* Did you see it afterwards?

"*A.* I did.

" *Q.* And examine it?

"*A.* I did.

" *Q.* Anything said by him or anybody as to how he fixed it or where he fixed it?

"*A.* There was not.

" *Q.* State whether or not you had any notice then that he had used the jointer for it?

"*A.* I did not.   I didn't even inquire as to how he produced the piece; the main thing I looked at was that the piece was what I wanted.   * * *

" *Q.* State what knowledge an improver, one who had

represented that he had been nine months in a pattern shop, what knowledge he would be supposed to have in regard to the purpose of the different machines around?

"*A.* Well, it would be naturally inferred from conditions of that kind that a man who had been accustomed to seeing machines used, pattern shop machinery for that length of time, would know something about the use of them, but this was customary in all pattern shops for the apprentices after he has been in the shop three months to be placed at the work of getting out rough material for other journeymen to use."

And on cross-examination he testified as follows:

"*Q.* Is it true about an improver that he is supposed to use any of these machines? He is supposed to use these machines at his own discretion, namely such as you have stated were in the pattern room?

"*A.* He is supposed to ask the question if a man is going in under these conditions, if he has used woodworking machines, and if he says yes, that is all the foreman of the pattern room can ask for.

"*Q.* You asked him this question, did you?

"*A.* Yes, sir, I did, and he said he did.

"*Q.* He said he did. You supposed then, of course, that he was capable of using any of the machines?

"*A.* I didn't state any particular machines to him one way or the other, I took it in a general sense.

"*Q.* Then you supposed that he would be able to use any of them?

"*A.* I didn't think he would be proficient in it, but simply capable of using them in a way. I told him they were dangerous machines, and that they would cut him as quick as they would me. I didn't understand whether or not he seemed to appreciate or understand what I said to him about their being dangerous; now, this was all the instruction that I gave him about the machines."

The defendant also called as a witness one Kyle Murrey, who testified that on the day previous to the injury received by the plaintiff, he saw the plaintiff start to run a small piece of wood across the knives of the jointer, and that witness told the plaintiff about running small pieces across the knives.

"I told him that it was dangerous; I told him, for him

to run small pieces like that across there he would be apt to lose something. He stopped running the machine and went away."

On the day in question, plaintiff undertook to shape up a piece of wood on the jointer, and while doing so, the injury resulted. The case was submitted to the jury, a verdict resulted in favor of the defendant, and the plaintiff brings error, assigning a large number of errors on the charge of the court. The instructions appear to have confined the plaintiff's case to a single claim, namely, that he was specifically set to work to do this particular piece of work by the foreman of the defendant. We think the second count of the declaration is broad enough to permit a recovery in case the work in which plaintiff was engaged was work in which he was expected to make use of the machine in question, and might naturally be expected to resort to the use of such machine, if there was a failure of duty in giving him proper instructions.

In stating the claim of defendant, the circuit judge charged as follows:

" The defendant denies that plaintiff was ever directed or authorized to use the jointer, and claims that his use of the machine had been expressly forbidden and that plaintiff had not only been told not to use it, but had been stopped by a fellow employé when he was using it, or trying to use it."

We are constrained to hold that the circuit judge misapprehended the testimony upon this point. The testimony of defendant's foreman does not show an absolute prohibition to use the machine, in terms. The construction of this testimony is of course for the jury, but it may be fairly said that it was open to the construction that plaintiff was expected to make use of the machine, and it was for this reason that he was cautioned that it was a dangerous machine. He was certainly not told that he was not to use it, nor had he been in fact stopped by a fellow employé when he was using it. It is true that the follow employé had told him that it was dangerous, and

that in running small pieces through this jointer, he would be apt to lose something. But he had not in terms stopped his using it.

We think the court was also in error in narrowing the issue to the question of whether the plaintiff was directed by the foreman specifically to use the jointer in planing blocks if he wanted to and in stating that if he was not so told by the foreman, his case would end there. If as a matter of fact the plaintiff, from the nature of his employment, might fairly have understood that he was expected to make use of the machine, and this was a question for the jury, then the duty of proper instruction was imposed upon the defendant. Upon this point the circuit judge properly charged the jury that it was the duty of the defendant foreman, before setting him to work in operating the jointer, to explain to him its mode of successful operation, its dangers to the unskilled, and the care and attention demanded from its operator, and that the degree of instruction to be given to the servant depends upon the age and experience of the servant and the dangerous character of the machine he is directed to operate. This instruction was in harmony with the decisions of this court in *Ertz* v. *Pierson,* 130 Mich. 160; *Allen* v. *Jakel,* 115 Mich. 484; and *Braasch* v. *Michigan Stove Co.,* 147 Mich. 676. The circuit judge also properly charged the jury that it was a question for them as to whether, if the plaintiff was so directed by the foreman to operate this machine but was not instructed about its use, he knew enough about the machine to apprehend and appreciate the danger likely to arise from its use by him or whether the danger from its use was obvious to a boy of his age and experience, and if it was, that his own negligence would be a bar to recovery.

The error, however, arose out of misconstruing the testimony of the defendant's witnesses, and in assuming that the use of this machine had been expressly forbidden to the plaintiff, and also in requiring as an essential to recovery proof of actual specific direction to use this

machinery, even though the jury should find that from the nature of the employment its use by the plaintiff was to be expected and anticipated.

The judgment is reversed, and a new trial ordered.

GRANT, C. J., and BLAIR, OSTRANDER, and MOORE, JJ., concurred.